**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF TEAMSTERS, LOCAL 743,** | ) | |
| | ) | **Case No.** 21-CV-3840 |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CENTRAL STATES, SOUTHEAST AND** | ) | |
| **SOUTHWEST AREAS HEALTH AND** | ) | |
| **WELFARE PENSION FUNDS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**VERIFIED COMPLAINT FOR**
**DECLARATORY, INJUNCTIVE RELIEF TO COMPEL ARBITRATION**

Plaintiff, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 743 ("Teamsters" or "Plaintiff"), files this verified complaint for declaratory, injunctive relief to compel arbitration against Defendant, CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE PENSION FUND ("Central States" or "Defendant") and states as follows:

**JURISDICTION AND VENUE**

1.      This matter arises under the laws of the United States, and this Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and the Labor-Management Relations Act, 29 U.S.C. § 185 (hereinafter "Act").

2.      Plaintiff Local 743 is an affiliated union of the International Brotherhood of Teamsters (hereinafter "Local 743").  Local 743 is an unincorporated association that exists for

1

the purpose of representing employees in collective bargaining with employers in industries affecting commerce and is a labor organization within the meaning of 29 U.S.C. § 152(5).

3.     Plaintiff's principal place of business is located in Chicago, Illinois and is within the judicial district of the United States District Court for the Northern District of Illinois.

4.     Defendant's principal place of business is located in Chicago, Illinois and is within the judicial district of the United States District Court for the Northern District of Illinois.

5.     Defendant is an employer engaged in interstate commerce within in the meaning of 29. U.S.C. Section 152 (2) of the Labor-Management Relations Act.

## THE PARTIES AND THE CBAs

6.     Plaintiff represents two separate bargaining units employed by the Defendant.  One bargaining unit represents employees paid by hourly wages ("Hourly Unit").  The other bargaining unit represents employees paid by salary ("Salaried Unit").

7.     At all relevant times, each Unit's wages, hours and working conditions were governed by a collective bargaining agreement ("CBA") with Defendant.  The CBA between the Hourly Unit and Defendant ("Hourly CBA") is effective from April 1, 2018, to March 31, 2024. The CBA between the Salaried Unit and Defendant ("Salaried CBA") is effective from July 1, 2018, to June 30, 2024.  Each CBA sets forth the specific positions each Unit represents.  *See* (Exhibit A (CBA between Hourly Unit and Defendant); Exhibit B (CBA between Salaried Unit and Defendant)).

8.     Section 5.2(a) of the Hourly CBA states that Defendant and the Hourly Unit "shall" negotiate "for a reasonable period of time" about mid-term changes in the CBA that modify, alter,

add to withdraws or injects any new plan of an economic nature covering the wages or other benefits" of employees. Section 5.2(b) of the Hourly CBA, entitled "Interest Arbitration on Mid-Term Changes", provides that if the parties cannot reach an agreement, "the parties **shall** proceed to an interest arbitration in which an arbitrator … determines any and all wages, benefits, and working condition issues that may arise from the Employer's proposals and the Union's counter proposals or responses." (Exhibit A) (emphasis added).

9. Each CBA also provides for final and binding grievance arbitration, for its respective Unit. (Exhibit A; Exhibit B).

10. Section 13 of the Hourly CBA provides for the resolution of disputes between the parties as follows:

"13.1 Grievance Process

In order to provide an orderly method of handling / disposing of all disputes, misunderstandings, differences, or grievances arising between the Employer and the Union and/or the employees covered by this Agreement as to the meaning, interpretation, and application of the provisions of this Agreement, such differences shall be settled in the following manner:

 A. An employee wishing to process a grievance shall, within five (5) scheduled workdays after the event occurs which gave rise to the grievance, or he receives knowledge of said event, submit his grievance to his supervisor who shall endeavor to adjust or answer the grievance within five (5) scheduled workdays.

 B. In the event the grievance is not satisfactorily adjusted in Step A, the grievance shall be reduced to writing and submitted to the Human Resources Group within thirteen (13) scheduled workdays after the event occurs which gave rise to the grievance, or the employee receives knowledge of said event. The written grievance shall identify the section and sub-section of the Agreement allegedly violated. The grievance shall state as explicitly as possible the precise nature of the grievance and the remedy requested.

3

Subsequent processing of the grievance shall be confined to the grievance as written. Any settlement at Step A or Step B shall be binding upon the Employer, the Union and the aggrieved employee. In the event that the grievance cannot be settled the Employer shall submit its written answer to the grievant within ten (10) scheduled workdays of the submission of the written grievance. Management staff without direct responsibilities for the Administrative Services Group will preside over grievance hearings for Administrative Services Group grievances.

C. In the event the answer in Step B is not considered satisfactory, the Employer or Union shall, within twelve (12) scheduled workdays of submission of the written grievance in Step B, submit a request in writing for binding arbitration of the dispute. …"

(Exhibit A).

11. Section 12 of the Salaried CBA addresses grievances. It does not differ from the quoted language in the Hourly CBA in any way relevant to this dispute. (Exhibit B).

12. The Hourly CBA addresses vacation leave in Section 18. The Hourly CBA addresses paid time off in Section 19. Neither section allows Defendant to deduct either form of benefit time as a form of discipline. (Exhibit A).

13. The Salaried CBA addresses vacation leave in Section 26. The Salaried CBA addresses paid time off in Section 27. Neither section allows Defendant to deduct either form of benefit time as a form of discipline. (Exhibit B).

14. The parties' CBAs provide for Maintenance of Standards including wages and benefits and states, "No employee covered by this Agreement shall suffer any loss of wages or benefits through the signing of this Agreement. . . ." (Exhibit A, § 5 and Exhibit B, § 5).

**THE POLICY**

15.     In response to the COVID-19 pandemic, and at Defendant's direction, employees represented by the Plaintiff began working remotely in Spring, 2020, and continue to work remotely.  In Spring, 2021, Defendant announced that Plaintiff's members would return to "in-person" work at its facilities sometime later in 2021.

16.     On or about May 26, 2021, Defendant promulgated a COVID-19 vaccination policy ("Policy"), which it intended to implement when employees returned to "in person" work.  Plaintiff became aware of the Policy on or about May 26.

17.     The Policy provides that if an employee has not received a COVID-19 vaccine and does not have a Defendant-approved religious or medical accommodation, he or she could not enter Defendant's facilities.

18.     The Policy further provides that an employee would have paid time off deducted from his or her paid time off bank for each work day they refused to receive the vaccine, and, therefore could not report to work.  Under the Policy, once an employee exhausted his or her paid time off, he or she would be subject to discipline up to and including termination.  (Exhibit of earliest form of Policy, Exhibit C).

19.     The Policy is a "Mid Term Change," as that term is used in section 5.2(b) of the Hourly CBA in that it is a new plan of an economic nature covering wages or other benefits.

**COMMUNICATION BETWEEN THE PARTIES REGARDING THE POLICY**

20.     On May 27, 2021, Plaintiff issued a demand to bargain the Policy with the Defendant.

21.     The parties met several times in an attempt to bargain changes to the Policy, and the parties exchanged proposals and counterproposals.  However, the Defendant was unwilling to negotiate over the mandatory nature of the vaccine program.

22.     The parties did not reach agreement on the issues they respectively raised.

23.     On June 1, 2021, Local 743 advised Defendant that implementation of the Policy could lead to the termination of approximately 30 percent of the members of both bargaining units.

24.     On June 11, 2001, a grievance was filed protesting the Policy on behalf of the Hourly bargaining unit.  (Exhibit D "Hourly Grievance").

25.     On June 11, 2001, a grievance was filed protesting the Policy on behalf of the Salaried bargaining unit.  (Exhibit E "Salaried Grievance").

26.     The remedy sought in both the Grievances was in part the rescission of the policy. *See* (Exhibit D (Hourly Grievance); Exhibit E (Salaried Grievance)).

27.     On June 14, 2021, Defendant advised Local 743 that it planned to commence implementation of the Policy.

28.     On June 28, 2021, Defendant distributed the Policy to its employees.

29.     On July 6, 2021, Defendant informed Local 743 that it would implement the Policy for all employees.

30.     Defendant set a return-to-work date of September 7, 2021. See Exhibit I.  Defendant acknowledged that the grievances remained outstanding, but stated that it would make no effort to obtain an arbitrator's ruling on this matter before it implemented the Policy.

6

31.     During the negotiations on this policy, the union requested the Defendant to delay implementation of the policy pending arbitration of the grievances filed on behalf of the hourly and salaried employees bargaining unit.  The Defendant declined the request.

32.     To be fully vaccinated by the September 7, 2021 return-to-work date, an employee would have to receive his or her first of two COVID-19 vaccine injection no later than July 27, 2021.

## OBJECTIONS TO THE POLICY

33.     The Policy provides that if a bargaining unit member is not vaccinated and does not have a religious or medical accommodation, he or she will lose paid time off, and will be subject to disciplinary procedures (including termination) once all the specified benefit time expires.  *See* (Exhibit F).

34.     The Policy violates both CBAs with respect to the "benefits of" employment. Neither CBA allows deductions from vacation leave or paid time off, and the parties did not contemplate that such leave would be deducted for disciplinary reasons or as a result of a personal medical choice.

35.     The Policy also violates both CBAs with respect to the "terms and conditions of" employment.  Defendant is creating a new "condition of" employment—an employee must receive a vaccine with unknown long-term effects or suffer a progressive loss of benefit time leading to termination.  Neither CBA allows this by its text, and the parties did not contemplate this during bargaining.

36.     Defendant refuses to engage in any arbitration process that would ensure that an arbitrator hears and decides this matter before Defendant implements the Policy.

37.     Defendant has implemented the Policy despite its contractual requirement to engage in interest arbitration for any change in working conditions.

38.     Both the hourly grievance and the salaried grievances remain unresolved. Defendant has refused the Plaintiff's request to expedite grievance arbitration.

39.     Local 743 has never stated or implied that the Policy may be implemented before an arbitrator rules on it.  Defendant is aware of the Union's continued opposition to the Policy.

## COUNT I (INJUNCTIVE RELIEF IN AID OF INTEREST ARBITRATION ON BEHALF OF THE HOURLY UNIT)

40.     Local 743 realleges and incorporates by reference Paragraphs 1 through 39 of this Complaint.

41.     The Hourly CBA governs all wages, hours, benefits, and terms and conditions of employment for members of the Hourly Unit.

42.     The Hourly CBA does not empower Defendant to diminish benefits of bargaining unit members for failing to receive a vaccine.

43.     The Hourly CBA does not empower Defendant to unilaterally implement a new Policy of an economic nature covering wages or benefits that creates a condition of employment, and subjects employees to termination for failing to comply with the Policy.

44.     Section 5.2(b) of the Hourly CBA specifies that if the Hourly Unit and Defendant cannot agree on a mid-term contract change proposed by Defendant, the parties "shall" proceed to an interest arbitration where an arbitrator "determines" all issues raised their respective proposals.

45.     On or about July 8, 2021, Local 743 requested the Defendant engage in an interest arbitration proceeding to resolve the disputes about the mandatory vaccination Policy required of the employees represented by the Unit. Exhibit G.

46.     As of the filing of this complaint, Defendant has declined to commence an interest arbitration proceeding. Exhibit H.

47.     Defendant has announced that it will not wait for the resolution of any arbitration proceeding to implement the Policy and has implement the Policy without an arbitrator's ruling. Exhibit I.

48.     Local 743, through its request for interest arbitration, seeks a determination from an arbitrator whether the mandatory vaccine requirement should be a new term and condition of employment and under what circumstances employees should be allowed to return to in-person office work, e.g., without vaccinations and subject to COVID-19 testing protocols, mask wearing, social distancing, separate areas of work for vaccinated and nonvaccinated employees and other safeguards under which employees can work in a safe environment. .

49.     Only an arbitrator should resolve the issue for which Local 743 on behalf of the Hourly Unit has requested interest arbitration, but that process would likely not be completed by July 27, 2021.

50.     Under the parties' Hourly CBA, Defendant may not implement its challenged Policy and potentially cause irreparable harm to Hourly Unit members before proceeding to interest arbitration, as set forth in section 5.2(b) of the Hourly CBA.

51.     Defendant violates Section 5.2(b) by failing to proceed to interest arbitration and implementing the Policy before an arbitrator rules on this matter.

52.     Defendant would violate federal statutes, including but not limited to 9 U.S.C. § 4, by instituting the Policy before an arbitrator rules on this matter.

53.     Section 5.2(b) of the Hourly CBA constitutes a written agreement for arbitration. Defendant's refusal to arbitrate as required by the written agreement for interest arbitration is without good faith and constitutes an unjustified refusal to participate in the arbitration process.

54.     The employees in the Hourly Unit have a likelihood of success on the merits, have an ascertainable right in need of protection, will suffer irreparable harm in the absence of an injunction, do not have an adequate remedy at law, and are supported by the balance of the equities.

55.     Defendant's Policy would cause irreparable harm to Hourly the bargaining employees by forcing them to receive medication to which they do not truly consent.

56.     Hourly Unit employees have been aggrieved by the failure and refusal of Defendant to arbitrate pursuant to a written agreement for arbitration.

57.     Delaying arbitration of this matter would harm Hourly Unit employees without any corresponding legitimate benefit to Defendant.

58.     The substantial number of Hourly Unit members who do not wish to receive the vaccine hold good-faith, reasonable concerns about some aspect(s) of these novel vaccines, the long-term effects of which are not known and cannot be known.  These individuals have been threatened with the removal of benefits, and ultimately termination, if they do not comply with the Policy.  These concerns include but are not limited to:

        a. The good faith objections to the vaccine are based on concerns of employees of the impact of the vaccine on heart inflammation, fertility, allergic reactions to flu shots in general, side effects of vaginal bleeding, Bell's Palsy,

sickness for up to two weeks after receiving a flu shot, concern about impacting the immune system, and blood clots. (Florentino Dec. ¶¶ 12-15) (Exhibit J); (Garcia Dec. ¶¶ 9-16) (Exhibit K) (Tummillo Dec. ¶¶ 12-15) (Exhibit L).

b.   An employee contemplating having a family has concerns that the vaccine could affect her fertility. (Florentino Dec. ¶¶ 9, 13-14) (Exhibit J).

c. An employee has stated that she has valid concerns about the long term impact on her immune system. (Tummillo Dec. ¶¶ 10-12) (Exhibit L).

d.  An employee with a history of diabetes, anemia and a concern for vaginal bleeding has consulted her doctor, who has advised her that she had a valid reason not to take the vaccine. (Garcia Dec. ¶¶ 12-13) (Exhibit K).

e. Employees believe that they have no uncoerced choice but are compelled to take the vaccine or face the prospect of losing their jobs and not having sufficient income to pay basic household expenses or to pay for health insurance to cover their family members. (Florentino Dec. ¶¶ 4-8) (Exhibit J); (Garcia Dec. ¶¶ 5-8) (Exhibit K); (Tummillo Dec. ¶¶ 5-8) (Exhibit L).

59.    This court has jurisdiction to compel arbitration pursuant to the collective bargaining agreement and federal arbitration law, 9 U.S.C. § 4.

WHEREFORE, Plaintiff requests this Court to enter an order:

a.     For temporary, preliminary, and permanent injunctive relief preventing Defendant from implementing any part of the Policy until an arbitrator has issued a ruling in the Hourly Interest Arbitration;

b.     Awarding Plaintiff reasonable attorneys' fees as have been expended in the prosecution of this Complaint and Petition; and

c.      Awarding any other and further relief as this Court may deem to be just and proper under the circumstances.

**COUNT II [PLED IN THE ALTERNATIVE TO COUNT I]
(INJUNCTIVE RELIEF IN AID OF GRIEVANCE ARBITRATION
ON BEHALF OF THE HOURLY UNIT)**

60.     Local 743 realleges and incorporates by reference Paragraphs 1 through 59 of this Complaint.

61.     The Hourly CBA governs all matters of wages, benefits, and terms and conditions of employment for members of the Hourly Unit.

62.     The Hourly CBA does not empower Defendant to diminish benefits of bargaining unit members for failing to receive a vaccine.

63.     The Hourly CBA does not empower Defendant to implement a new condition of employment, then discipline bargaining unit members for failing to comply with the new Policy.

64.     Section 13 of the Hourly CBA sets forth the parties' procedures for processing grievances.

65.     A grievance was filed protesting the policy on behalf of the Hourly bargaining unit on June 11, 2021. Exhibit D. The Hourly Unit at all times has complied with Section 13.

66.     As of the filing of this Complaint, the Hourly bargaining unit grievance remains unresolved.

67.     As of the filing of this Complaint, Local 743 and Defendant have not reached an agreement on the issues raised by the Hourly bargaining unit.

68.     Defendant has implemented the Policy and refused to retract the Policy until the parties receive an arbitrator's ruling on the matter before July 27, 2021.  Exh. I.

12

69.     Local 743 on behalf of Hourly bargaining Unit, through the Hourly grievance seeks a determination from an arbitrator whether the Policy or Defendant's actions in implementing it violates the Hourly CBA.

70.     The Hourly bargaining unit grievance can only be decided through the arbitration process; however, that process could take several months to complete and likely will not be completed by July 27, 2021.

71.     Section 13 of the Hourly CBA constitutes a written agreement for arbitration. Defendant has declined to arbitrate this grievance on an expedited basis.

72.     Implementation of the Policy before this issue is ruled on by an arbitrator violates federal statutes, including but not limited to 9 U.S.C. § 4.

73.     The Hourly bargaining unit employees have been aggrieved by the failure and refusal of Defendant to arbitrate on an expedited basis prior to implementation of the Policy.

74.     The employees in the Hourly Unit have a likelihood of success on the merits, have an ascertainable right in need of protection, will suffer irreparable harm in the absence of an injunction, do not have an adequate remedy at law, and are supported by the balance of the equities.

75.     Defendant's Policy would cause irreparable harm to Hourly the bargaining employees by forcing them to receive medication to which they do not truly consent.

76.     Delaying arbitration of this matter would harm Hourly bargaining unit employees without any corresponding legitimate benefit to Defendant.

77.     The substantial number of Hourly Unit members who do not wish to receive the vaccine hold good-faith, reasonable concerns about some aspect(s) of these novel vaccines, the long-term effects of which are not known and cannot be known.  These individuals have been

13

threatened with the removal of benefits, and ultimately termination, if they do not comply with the Policy. These concerns include but are not limited to:

      a. The good faith objections to the vaccine are based on concerns of employees of the impact of the vaccine on heart inflammation, fertility, allergic reactions to flu shots in general, side effects of vaginal bleeding, Bell's Palsy, sickness for up to two weeks after receiving a flu shot, concern about impacting the immune system, and blood clots. (Florentino Dec. ¶¶ 12-15) (Exhibit J); (Garcia Dec. ¶¶ 9-16) (Exhibit K) (Tummillo Dec. ¶¶ 12-15) (Exhibit L).

      b. An employee contemplating having a family has concerns that the vaccine could affect her fertility. (Florentino Dec. ¶¶ 9, 13-14) (Exhibit J).

      c. An employee has stated that she has valid concerns about the long term impact on her immune system. (Tummillo Dec. ¶¶ 10-12) (Exhibit L).

      d. An employee with a history of diabetes, anemia and a concern for vaginal bleeding has consulted her doctor, who has advised her that she had a valid reason not to take the vaccine. (Garcia Dec. ¶¶ 12-13) (Exhibit K).

      e. Employees believe that they have no uncoerced choice but are compelled to take the vaccine or face the prospect of losing their jobs and not having sufficient income to pay basic household expenses or to pay for health insurance to cover their family members. (Florentino Dec. ¶¶ 4-8) (Exhibit J); (Garcia Dec. ¶¶ 5-8) (Exhibit K); (Tummillo Dec. ¶¶ 5-8) (Exhibit L).

78.     This court has jurisdiction to compel arbitration and to order an injunction in aid of arbitration pursuant to the collective bargaining agreement and federal arbitration law, 9 U.S.C. § 4.

WHEREFORE, Plaintiff requests this Court to enter an order:

a.  For temporary, preliminary, and permanent injunctive relief preventing Defendant from implementing any part of the Policy until an arbitrator has ruled on the Salaried Grievance;

b.  Awarding Plaintiff reasonable attorneys' fees as have been expended in the prosecution of this Complaint and motion to compel; and

c.  Awarding any other and further relief as this Court may deem to be just and proper under the circumstances.

## COUNT III (INJUNCTIVE RELIEF IN AID OF GRIEVANCE ARBITRATION ON BEHALF OF THE SALARIED UNIT)

79.     Local 743 realleges and incorporates by reference Paragraphs 1 through 78 of this Complaint.

80.     The Salaried CBA governs all matters of wages, benefits, and terms and conditions of employment for members of the Salaried bargaining unit.

81.     The Salaried CBA does not empower Defendant to diminish benefits of bargaining unit members for failing to receive a vaccine.

82.     The Salaried CBA does not empower Defendant to implement a new condition of employment, then discipline bargaining unit members for failing to comply.

83.     Section 12 of the Salaried CBA sets forth the parties' procedures for processing grievances.

84.     Salaried bargaining unit member Cindy McGinnis filed the salaried grievance against the Policy on June 11, 2021. Exhibit E.  The Local 743 at all times has complied with Section 12.

85.     As of the filing of this Complaint, the salaried grievance remains unresolved.

86.     As of the filing of this Complaint, Local 743 and Defendant have not reached an agreement on the issues raised by the salaried grievance.

87.     Defendant has announced that it does not plan to wait for the resolution of the salaried grievance to implement the Policy and has implemented the Policy without an arbitrator's ruling.  Defendant has further announced that it will take no measures to ensure that the salaried grievance is heard before July 27, 2021. Exh. I.

88.     The Local 743, through the salaried grievance, seeks a determination from an arbitrator whether the Policy, or Defendants' actions in implementing it, violates the Salaried CBA.

89.     The salaried grievance can only be decided through the arbitration process; however, that process could take several months to complete and likely will not be completed by July 27, 2021.

90.     The employees in the Salaried Unit have a likelihood of success on the merits, have an ascertainable right in need of protection, will suffer irreparable harm in the absence of an injunction, do not have an adequate remedy at law, and are supported by the balance of the equities.

91.     Defendant's Policy would cause irreparable harm to the Salaried bargaining unit employees by forcing them to receive medication to which they do not truly consent.

16

92.     Delaying arbitration of this matter would harm Salaried bargaining unit employees without any corresponding legitimate benefit to Defendant.

93.     The substantial number of Salaried Unit members who do not wish to receive the vaccine hold good-faith, reasonable concerns about some aspect(s) of these novel vaccines, the long-term effects of which are not known and cannot be known.  These individuals have been threatened with the removal of benefits, and ultimately termination, if they do not comply with the Policy.  These concerns include but are not limited to:

> a. The good faith objections to the vaccine are based on concerns of employees of the impact of the vaccine on heart inflammation, fertility, allergic reactions to flu shots in general, side effects of vaginal bleeding, Bell's Palsy, sickness for up to two weeks after receiving a flu shot, concern about impacting the immune system, and blood clots.

> b. Employees believe that they have no uncoerced choice but are compelled to take the vaccine or face the prospect of losing their jobs and not having sufficient income to pay basic household expenses or to pay for health insurance to cover their family members.

94.     Defendant's Policy would cause irreparable harm to Salaried bargaining unit employees by forcing them to receive medication to which they do not truly consent.

95.     If Defendant implements the Policy before this issue is ruled on by an arbitrator, it will violate federal statutes, including but not limited to 9 U.S.C. § 4.

96.     Section 12 of the Salaried CBA constitutes a written agreement for arbitration. Defendant's refusal to arbitrate this grievance on an expedited basis is without good faith and constitutes an unjustified refusal to participate in the arbitration process.

97.     The Salaried bargaining unit has been aggrieved by the failure and refusal of Defendant to arbitrate on an expedited basis prior to implementation of the Policy.

98.     Delaying arbitration of this matter would harm Salaried unit employees and its members without any corresponding legitimate benefit to Defendant.

99.     The substantial number of Salaried, bargaining unit employees who do not wish to receive the vaccine hold good-faith, reasonable concerns about some aspect(s) of these novel vaccines, the long-term effects of which are not known and cannot be known.  These individuals have been threatened with the removal of benefits, and ultimately termination if they do not comply with the Policy.

100.    This court has jurisdiction to compel arbitration pursuant to the collective bargaining agreement and federal arbitration law, 9 U.S.C. § 4.

WHEREFORE, Plaintiff requests this Court to enter an order:

a.      For temporary, preliminary, and permanent injunctive relief preventing Defendant from implementing any part of the Policy until an arbitrator has ruled on the Salaried Grievance;

b.      Awarding Salaried Unit reasonable attorneys' fees as have been expended in the prosecution of this Complaint and Petition; and

c.      Awarding any other and further relief as may be just and proper under the circumstances.

Respectfully submitted,

_____

Joel A. D'Alba

_____

Margaret Angelucci

Attorneys for Plaintiff

Joel A. D'Alba
Margaret Angelucci
ASHER, GITTLER & D'ALBA, LTD.
200 W. Jackson Boulevard - Suite 720
Chicago, IL 60606
Tel: (312) 263-1500
Email: jad@ulaw.com
maa@ulaw.com

19

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing Verified Complaint for Declaratory, Injunctive Relief to Compel Arbitration is true and correct to the best of my knowledge and belief.

Dated: July 19, 2021.

Debra Simmons-Peterson